983 So.2d 798 (2008)
Larry and Rosie ADAMS
v.
RHODIA, INC. and Exxon Mobil Corporation.
No. 2007-C-2110.
Supreme Court of Louisiana.
May 21, 2008.
Rehearing Denied June 27, 2008.
*801 Aidan Cyril Reynolds, Christopher Lee Whittington, Baton Rouge, for applicant.
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Louis Victor Gregoire, Jr., Melissa Ann Hemmans, Baton Rouge; Winstead, Schrest & Minick, Michael P. Cash, Pro Hac Vice, for respondent.
WEIMER, Justice.
This matter comes before the court pursuant to a writ application filed by plaintiff. The court of appeal reversed a jury verdict in plaintiff's favor finding the jury was misled by supplemental instructions delivered by the trial court in response to a jury question. This court granted certiorari to determine whether the court of appeal properly conducted a de novo review of the record. Adams v. Rhodia, Inc., 07-2110 (La.1/7/08), 972 So.2d 1151.
We conclude the court of appeal erred in performing a de novo review. Further, after reviewing the record for manifest error, we find the court of appeal's reversal of the jury verdict was also in error. Thus, we reverse the court of appeal decision and reinstate the jury verdict.

FACTS AND PROCEDURAL HISTORY
Larry Adams was seriously injured on May 15, 2000, when a sulfuric acid storage tank over-pressured causing the release of sulfur dioxide gas and aerosolized sulfuric acid mist. The release occurred at the facility of Rhodia, Inc. (Rhodia) at storage Tank 10 which contained spent sulfuric acid delivered to Rhodia from Exxon Mobil Corporation (Exxon).[1]
On the evening prior to Adams' injury, another employee attempted to transfer spent sulfuric acid from Rhodia's Tank 10 onto a barge. During this procedure, he noticed Tank 10 showed an unusually rapid and high rise in temperature. According to company protocol, he shut off all intake and output valves to the tank. He noted the incident in the log book and informed the shift supervisor.
When Adams arrived at work the following morning, his co-worker informed him of the events of the prior evening. Contrary to the normal company procedure for determining the cause of the sudden rise in temperature, Adams was ordered to transfer the spent acid from Tanks 7 and 10 onto the barge. As soon as the valve on Tank 10 was opened, Adams noticed a spike in temperature. He electronically stopped the unloading from the control *802 room and went outside to block off the tank by manually shutting the valve. While he was near the tank, the safety relief valve on the top of the tank blew off releasing sulfur dioxide gas.[2] Adams suffered severe injuries as a result of exposure to and inhalation of the gas.
Adams and his wife, Rosie, filed suit naming Rhodia and Exxon as defendants. Additional defendants were named by supplemental and amending petitions. At the time of trial, the only remaining parties were Exxon and Adams. It was plaintiff's contention that Exxon was negligent in sending to Rhodia spent sulfuric acid contaminated with insoluble hydrocarbons,[3] which caused an exothermic reaction that led to the chemical release that severely injured him. It was defendant's contention that Rhodia's storage and manner of handling the spent acid created the overheating that caused the release of sulfur dioxide gas.
The matter was tried to a jury. After the case was submitted and the jury began deliberations, the jury posed this question to the court: "If one hundred percent of fault was on Rhodia, would all the compensation come from Rhodia?" Following discussion with counsel, but without agreement of counsel as to the content of the supplemental jury charge, the trial court instructed the jury as follows:
The question is not susceptible to being answered yes or no and requires further explanation. Be instructed that fault may be allocated amongst and against any person. Compensation will come from a party. Everybody understand?
. . . .
All right. Fault or negligence can be allocated against any person. A person may be an individual or a corporation or a partnership. They can be persons and divided into fault. [sic]
Compensation, however, would come from a party in the litigation. A party is different from a person. A person may be a party. In this litigation there are two parties. . . .
You have two concepts you're talking about here, fault and compensation. Fault may be allocated, allocated means spread among, any person, any persons, involved in any way. You can spread fault. Compensation, on the other hand comes from a party. A party is a member of the action, the lawsuit.[4]
. . . .
You will recall the court suggested to you that all persons are equal before the court, persons. A corporation is a person. I explained that to you. All right?
A party, however, the court did not instruct you on who is a party. A party is a litigant, party to the action.
*803 Following deliberations, the jury rendered a verdict in favor of plaintiff awarding a total of $4,461,000 in damages and assigning 2% fault to Adams, 10% fault to Exxon, and 88% fault to Rhodia. Judgment incorporating the jury verdict was signed by the trial court on March 27, 2006, in favor of plaintiff and against Exxon for the sum of $446,100 with judicial interest from date of demand until paid.
Exxon filed motions for remittitur and judgment notwithstanding the verdict. The trial court denied both motions. Exxon appealed. Plaintiff answered the appeal requesting an increase in the fault assigned to Exxon.
The court's response to the jury question formed the basis of the post-trial proceedings. On appeal, Exxon argued the instruction given by the court led the jury to believe that if they did not find Exxon responsible, Adams would not be compensated.
The court of appeal reversed the jury verdict, finding the additional instruction by the trial court "likely misled the jury on a crucial point," thus interdicting the fact-finding process and tainting the verdict. The court of appeal found that no weight should be accorded the jury verdict and conducted a de novo review of the record. Adams v. Rhodia, Inc., 06-1803, p. 9 (La. App. 1 Cir. 9/26/07), 971 So.2d 1084, 1090.
Based upon its review of the record, in a three-to-two decision, the court of appeal found plaintiff had not sustained his burden of proof that Exxon caused the accident and injury. Noting they would have reversed the decision even if the jury verdict were not tainted, the majority concluded the jury was clearly wrong in finding that plaintiff proved the requisite causal link between Exxon and the gas release.
In dissent, Judge Guidry did not agree the trial judge's instructions misled the jury such that the jury's verdict was tainted. Thus, he reasoned a de novo review of the record was inappropriate. Applying the manifest error/clearly wrong standard, he found a reasonable factual basis in the record to support the jury's decision to find Exxon 10 percent at fault for the accident.
Following the decision on appeal, plaintiff sought a writ of certiorari from this court arguing the court of appeal erred in isolating one instruction out of 23 legal pages of instructions to the jury to determine that the jury was misled. Plaintiff asserts nothing in the trial court's response to the jury question was legally wrong, misleading, or confusing. Additionally, plaintiff argues there is no support for the conclusion that the jury was confused or misled.
Plaintiff also argues the record amply supports the jury's determination that Exxon was negligent. The evidence established the pipeline was dedicated to receive only Exxon products. Plaintiff contends the jury properly rejected Exxon's stagnation theory[5] as Rhodia had been safely handling spent sulfuric acid without a single similar accident or release for more than 60 years. Testimony established that Exxon sent over insoluble hydrocarbons that caused a release on three occasions following the release at issue in May 2000; these incidents resulted in Exxon's purchase of monitoring technology so that Rhodia could be alerted to future contaminations and could alter its removal procedures.

*804 DISCUSSION
Louisiana Code of Civil Procedure article 1792(B) requires the trial court to instruct jurors on the law applicable to the cause submitted to them. The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate. Baxter v. Sonat Offshore Drilling Inc., 98-1054, p. 6 (La.App. 1 Cir. 5/14/99), 734 So.2d 901, 906.
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; the judge must, however, correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La. App. 3 Cir.1991).
Correlative to the judge's duty to charge the jury as to the law applicable in a case is a responsibility to require that the jury receives only the correct law. Melancon v. Sunshine Construction, Inc., 97-1167, p. 6 (La.App. 1 Cir. 5/15/98), 712 So.2d 1011, 1016; Doyle, 576 So.2d at 1152.
Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. We assume a jury will not disregard its sworn duty and be improperly motivated. We assume a jury will render a decision based on the evidence and the totality of the instructions provided by the judge.
However, when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. Nicholas v. Allstate Insurance Company, 99-2522, p. 8 (La.8/31/00), 765 So.2d 1017, 1023; see also Brown v. White, 405 So.2d 555, 560 (La.App. 4 Cir. 1981), rev'd on other grounds on reh'g, 430 So.2d 16 (La.1983) (the question is whether the jury was misled to the extent that it was prevented from doing justice) and Jones v. Liberty Mutual Insurance Company, 568 So.2d 1091, 1094 (La.App. 5 Cir.1990), writ denied, 572 So.2d 72 (1991) (reversible error occurs when the jury is misled to such an extent as to prevent it from doing justice).
Determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. See Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d 466 (La.App. 1 Cir.), writs denied, *805 638 So.2d 1094 (La.1994). Because the adequacy of jury instruction must be determined in the light of jury instructions as a whole, when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Brown, 405 So.2d at 558.
In the instant case defendant's challenge to the jury instruction arose after the jury posed a question. As indicated, the jury asked whether all compensation would come from Rhodia if 100 % of fault was attributed to Rhodia. The plaintiff urged the judge to answer the jury's question in the negative, while the defendant urged the judge to answer the jury's question in the affirmative. Obviously, the judge could not do both. Instead, the judge explained to the jury that she could not respond to the question with a "yes" or "no" answer. The judge then proceeded to give the jury a limited re-instruction on the obligations of parties and non-parties, which was, in effect, a supplemental charge.[6] "The supplemental charge must be considered as an addition to the original instruction rather than as an independent charge. As long as the combined charges accurately cover the point of law at issue, no reversible error exists." United States v. L'Hoste, 609 F.2d 796, 805 (5 Cir.), quoting United States v. Blevins, 555 F.2d 1236, 1239 (5th Cir.1977), cert. denied, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978).
Exxon cites Jones v. St. Francis Cabrini Hospital, 94-2217 (La.4/10/95), 652 So.2d 1331, as an example of a case in which no weight was accorded the jury verdict despite the fact that the trial court's jury instruction, when taken as a whole, was not an erroneous statement of the law. That case is distinguishable because certain language used in the instruction, especially if viewed in light of the closing argument, had the potential to mislead the jury. Significantly, the potentially misleading language combined with the jury's internally inconsistent verdict justified a de novo review of the record. Id., 94-2217 at 7, 652 So.2d at 1335.
The jury in this case did not return an inconsistent verdict. The jury made an affirmative decision that Exxon was negligent and should be assessed with 10% of the fault. A careful review of the arguments presented to the jury by counsel demonstrates that comparative fault was a paramount issue. Because a reviewing court must exercise great restraint before disregarding a jury verdict and turning to de novo review, the mere suggestion that the instructions were so erroneous as to be prejudicial does not trigger such a review.
In the instant case, the jury verdict form required the jury to assign fault among parties and a non-party. The trial court, in both the original jury instructions and in the supplemental jury instruction, repeatedly advised the jury that fault should be allocated among all that are involved in any way in causing the plaintiff's *806 injuries, whether a party or not.[7] In the supplemental charge, the trial court also reiterated that all are equal before the law and referenced the jury instructions previously given. The supplemental instruction cannot be isolated to support Exxon's argument that the jury acted out of sympathy for the plaintiff.[8]
Considering the original charge and the supplemental charge as a whole in conjunction with the entire record, we find that the jury charge in this case "adequately provide[d] the correct principles of law" and did not mislead the jury "to the extent that it was prevented from dispensing justice." Nicholas, 99-2522 at 8, 765 So.2d at 1023. Thus, we hold that the court of appeal erred in conducting a de novo review of the record.
Because we find no error in the jury instructions warranting de novo review, the jury's determination is subject to review for manifest error. Ferrell v. Fireman's Fund Insurance Co., 94-1252, pp. 3-4 (La.2/20/95), 650 So.2d 742, 745. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Id. at 883. Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great *807 deference to the findings of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Indeed, where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Id. at 845. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. Lasyone v. Kansas City Southern Railroad, 00-2628, p. 13 (La.4/3/01), 786 So.2d 682, 693.
Thus, we review the facts of the case only to determine if the jury's conclusion that Exxon was 10% at fault was manifestly erroneous. The jury heard testimony from plaintiff's expert, defendant's expert, and a representative of Rhodia as to the cause of the incident. Unquestionably, the contents of the tank came from Exxon. However, there was a disagreement as to whether Exxon was responsible for sending insoluble hydrocarbons in the spent sulfuric acid transferred to Rhodia.
Plaintiff's expert, a chemical engineer and consultant, was asked to analyze and attempt to determine what caused the accident. He was also asked to calculate how many pounds, or the concentration of sulfur dioxide and other air pollutants and contaminants, might have been released during this event on May 15. He testified the level of substance within the tank decreased by at least two inches as a result of the release of material from the tank. The release was in the form of liquid turned into gas and liquid that went out as a fine mist spray. His calculations indicate about 10,000 pounds of material left the tank in a short period of time in the form of sulfur dioxide and sulfuric acid mist (similar to a fine fog). It was his opinion that, but for the fact that Exxon sent over spent acid contaminated with insoluble hydrocarbon, Adams would not have been exposed to the toxic fumes. His testimony was called into question because he believed the tank had been open the morning of the incident and the contaminant had entered the tank shortly before the accident. Although plaintiff's expert ultimately acknowledged the tank was closed off the morning of the accident, he testified that the critical factor was the insoluble hydrocarbons contaminated the spent sulfuric acid in tank 10 and that led to the chemical reaction which caused plaintiff's injuries.
Exxon's expert, a chemical engineer, testified the post-accident findings of insoluble hydrocarbons in the Rhodia tank were merely a product of the process of storing the acid in the tank in the hot sun for a long period of time without circulating the contents. He estimated the contents had been there for three or more weeks and the temperature had been building up over a period of four to five days prior to the release. It was his theory that if the contents of the tank had been agitated once every two or three days, the sulfur dioxide gas would have been released on a gradual basis and the accident would not have occurred.
We note that Rhodia's representative[9] who testified at the trial indicated it was Rhodia's position that the presence of hydrocarbons had nothing to do with the accident. Rhodia felt the reaction was due to chemical tars. Admittedly, no tars were found in the tank after the release, only a separated layer of insoluble hydrocarbons. Although Rhodia had never had a problem before with storage of the materials for months, even during the hot months, Rhodia's *808 theory was that it was a combination of heat without circulation and the sudden agitation that caused the incident.
However, the plaintiff refuted Rhodia's theory that the reaction was due to chemical tars. The Rhodia witness was not an expert and no tars were found in the tank after the chemical release, only insoluble hydrocarbons were documented.
Although the court of appeal found that plaintiff never directly rebutted Exxon's expert opinion, plaintiff's expert implicitly established the contamination was not a product of stagnation of the acid. Evidence presented at trial established Rhodia had been safely handling spent sulfuric acid without a single similar accident or release for more than 60 years. The jury was free to reject the opinion of defendant's expert and accept the opinion of plaintiff's expert that the presence of insoluble hydrocarbons in the tank after the accident proved Exxon improperly sent insoluble hydrocarbons. See Lasyone, 00-2628 at 13, 786 So.2d at 693. Thus, the jury's finding that Exxon was negligent and that Exxon's negligence was a contributing cause of Adams' injuries was not clearly wrong.
The evidence is sufficient to establish the presence of acid contaminated with insoluble hydrocarbons in the tank post accident, the source of the insoluble hydrocarbons was Exxon, the insoluble hydrocarbons were unexpected contaminates sent to Rhodia, and these hydrocarbons are volatile and reacted with the acid to cause the accident. Rhodia is not contractually required to process insoluble hydrocarbons and did not have the capacity to safely do so. The jury was entirely within its discretion in accepting the plaintiff's evidence and was not manifestly erroneous in assigning 10% fault to Exxon.
Additionally, Exxon argues that, assuming it did release insoluble hydrocarbons into the pipeline along with the spent sulfuric acid that was transferred to Rhodia, Rhodia's negligent conduct was an intervening, superceding cause of Adams' injury which relieves Exxon of liability.
An intervening cause is one which comes into play after the defendant's negligent conduct has ceased, but before the plaintiff suffers injury. RESTATEMENT (SECOND) OF TORTS § 440 (1965); 1 DAN B. DOBBS, THE LAW OF TORTS § 186 (2001). In situations in which there is an intervening force that comes into play to produce the plaintiff's injury (or more than one cause of an accident), it has generally been held that the initial tortfeasor will not be relieved of the consequences of his or her negligence unless the intervening cause superceded the original negligence and alone produced the injury. Arcadian Corporation v. Olin Corporation, 01-1060 (La.App. 3 Cir. 5/8/02), 824 So.2d 396, 405, writ denied, 02-1930 (La.10/25/02), 827 So.2d 1174; Mendoza v. Mashburn, 99-499, p. 16 (La.App. 5 Cir. 11/10/99), 747 So.2d 1159, 1168, writ denied, 00-0037 (La.2/18/00), 754 So.2d 976; Domingue v. State Department of Public Safety, 490 So.2d 772, 775 (La.App. 3 Cir.1986). If the original tortfeasor could or should have reasonably foreseen that the accident might occur, he or she will be liable notwithstanding the intervening cause. Id. In sum, foreseeable intervening forces are within the scope of the original risk, and hence of the original tortfeasor's negligence. Miller v. Louisiana Gas Service Co., 601 So.2d 700, 705 (La.App. 5 Cir.), writs denied, 604 So.2d 999, 604 So.2d 1001(1992), citing PROSSER AND KEETON, LAW OF TORTS (4th ed.1971) at 273-274, 288.
Applying that analysis to the facts of the instant case, it is apparent that the negligent conduct of Rhodia was foreseeable and within the risk of harm created by Exxon's negligence in introducing insoluble hydrocarbons into the pipeline, along *809 with spent sulfuric acid. The risk created by Exxon's conduct was the very risk that materialized in this case: an exothermic reaction triggered by the combination of insoluble hydrocarbons and spent sulfuric acid resulting in a gas leak. Rhodia's negligence in failing to analyze and detect the problem was foreseeable, given Exxon's failure to notify or advise Rhodia of the presence of contaminants in the pipeline.[10] Negligently interjecting a foreign contaminant into a pipeline carries the risk that a third person or entity will fail to identify or appreciate the risk in time to avoid it. Thus, Exxon's argument that it is relieved of liability based on an intervening, superceding cause is without merit.
Further, an appellate court should only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous. Duncan v. Kansas City Southern Railway Co., 00-0066, pp. 10-11 (La.10/30/00), 773 So.2d 670, 680. In considering whether the allocation of 10% fault to Exxon was manifestly erroneous, we utilize the standards set forth in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La. 1985).
In Watson this court indicated the trier of fact should consider the nature of the conduct of each party at fault, as well as the extent of the causal relationship between the conduct and the damages claimed when determining the percentages of fault to be assigned to the parties involved.[11] The jury's allocation of 10% fault to Exxon, 88% fault to Rhodia, and 2% fault to plaintiff is consistent with a reasonable evaluation of the relationships between the two corporations and the plaintiff, and their relative responsibilities in causing the accident.
Based upon a manifest error review, we find no error in the jury's determination that Exxon was 10% at fault for the accident causing injury to Adams.[12] We find no evidence that the supplemental instructions by the trial court misled the jury in its determination of fault. The jury returned a verdict finding Rhodia 88% at fault although Rhodia was no longer a party to the litigation.

CONCLUSION
For the foregoing reasons, we find the court of appeal erred in finding the jury *810 instruction misled the jury and in conducting a de novo review of the record. Following a manifest error review, we cannot say the jury erred in its determination that Exxon was 10% at fault for Adams' injuries and damages.
We reverse the court of appeal decision and reinstate the jury verdict.
REVERSED; JURY VERDICT REINSTATED.
VICTORY, J., dissents with reasons.
TRAYLOR, J., dissents for reasons assigned by VICTORY.
VICTORY, J., dissenting.
I respectfully dissent. I agree with the majority opinion from the court of appeal, which found that the trial court's additional instruction "likely misled the jury on a crucial point" and, upon de novo review, found that plaintiff did not sustain his burden of proof that Exxon caused the accident and injury. I would thus affirm the court of appeal judgment.
NOTES
[1] Spent sulfuric acid is a hazardous waste by-product of Exxon's chemical and refining process. Rhodia had a long-standing contract with Exxon to provide sulfuric acid for use at its facility. After use, Exxon returned the spent sulfuric acid to Rhodia for regeneration. The acid was transported through a direct pipeline between the facilities and stored at the Rhodia facility until the regeneration process could take place.
[2] Testimony adduced at trial indicated the tank (36' in diameter and 30' high) was equipped with a venting system consisting of a primary relief valve and a safety relief valve. The primary relief valve is designed to slowly release small amounts of sulfur dioxide gas. The safety relief valve, about the size of a manhole cover (approximately 2' in diameter), is designed to protect the integrity of the tank and prevent it from rupturing. On the morning of the accident, the safety relief valve, which weighed between 200 and 202 pounds, blew off the top of the tank releasing a significant quantity of sulfur dioxide gas.
[3] Throughout the record, hydrocarbons have been variously referred to as "light," "free," "carryover," "jet fuel," "separated," or "insoluble" hydrocarbons. For the sake of consistency, we will refer to the compound as insoluble hydrocarbons.
[4] Twice during the supplemental charge, the jurors indicated they did not understand the trial court's instruction necessitating the court's continued explanation.
[5] It was Exxon's theory that the release was caused by Rhodia's failure to circulate the spent acid contained in the tanks and allowing the spent acid to sit stagnant in summer heat which prompted a chemical reaction to occur.
[6] The content of trial court's supplemental charge is quoted on pages 3-4 of this opinion.
[7] In the instructions given following the close of the case, the court stated:

Louisiana law requires that you determine the fault of all persons whether plaintiffs, defendants, or non-parties who caused or contributed to any damages regardless of whether or not they are a party to this lawsuit or present at trial.
Thus, you must divide the total responsibility among all those who were involved. You should do this by assigning percentages of fault to the various involved persons which will total one hundred per cent.
Our law requires that you determine the fault of all persons who caused or contribute to any damage regardless of whether or not they are a party. If you should find that defendant is liable to the plaintiff, you must also consider the fault of any other non-parties, companies, or persons causing the alleged injuries and determine the extent to which their fault or negligence of any person or company contributed to the injury, if any, of Larry Adams.
[8] It would have been more appropriate if the trial court had instructed the jury that the question was irrelevant for the purposes of the jury's decision; that the jury was to determine fault, if any, as between all of those listed on the jury verdict form and if appropriate, decide damages; and that it would be the trial court's obligation to prepare a judgment based on the jury's determination. As the court of appeal stated: "The jury should have been instructed not to concern itself with how Mr. Adams would actually be paid or compensated for his injury. Rather, the jury's only responsibility was to fairly assign fault and award damages based on the evidence presented to them at trial." Adams, 06-1803 at 9, 971 So.2d at 1089-1090. See also, Magee v. Pittman, 98-1164, pp. 28-29 (La, App. 1 Cir. 5/12/00), 761 So.2d 731, 753, writ denied, 00-1684 (9/22/00), 768 So.2d 602. In that case the jury asked a question concerning the source of funds through which the damages would be paid. The court of appeal noted the trial court "properly and promptly admonished the jury that it was not to consider the source of payment." Although a similar instruction in the instant case would have foreclosed argument that the trial court's supplemental instruction misled this jury, for reasons recited, the lack of the preferable instruction was not reversible error.
[9] The witness was a technical service representative employed by Rhodia for 31 years. He was not qualified as an expert.
[10] Rhodia's representative testified that a similar release occurred on July 13, 2001, involving exclusively Exxon spent acid containing insoluble hydrocarbons. On that occasion Exxon notified Rhodia that the low acidity material was coming allowing Rhodia to prepare for its handling.
[11] In assessing the nature of the conduct of the parties, the court listed various factors that might influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, 469 So.2d at 974.
[12] Plaintiff's writ application contained two assignments of error: whether the trial court's comments in response to a question from the jury was proper and whether the manifest error standard of review precludes setting aside the jury's finding that Exxon was negligent. In brief to this court, plaintiff argues Exxon's fault should be increased. Based on this court's holding in Boudreaux v. State, Department of Transportation and Development, 01-1329, p. 5 (La.2/26/02), 815 So.2d 7, 11, that issue is not properly before this court and we are precluded from altering the fault of Exxon. Regardless, following a complete review of the record, we are convinced that the jury's allocation of fault is not manifestly erroneous.