AMY, J.,
dissenting.
|J disagree that a reversal is appropriate. Undoubtedly, the trial court erred in referencing the local standard of care in its supplemental instruction since the defendant was practicing as an internist and endocrinologist in the treatment of Mr. Pickering’s foot ulcers. However, an erroneous instruction, alone, does not necessarily require reversal of a jury verdict. Adams v. Rkodia, Inc., 07-2110 (La.5/21/08), 983 So.2d 798. In Adam,s, the Louisiana Supreme Court spoke extensively about the necessity of exercising great restraint before reversing a jury verdict “based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system.” Id. at 804.
Rather, in the presence of an erroneous jury instruction, an appellate court must consider the entirety of the jury charge to assess whether it provides the “correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice.” Adams, 983 So.2d at 804 (citations omitted). Significantly, the assessment of an erroneous jury charge “requires a comparison of the degree of error with the jury instructions as a whole and circumstances of the case.” Id. The supreme court further explained that:
12[T]he manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the judge’s instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error or considering the instructions as a whole and the circumstances of the case. Brown, 405 So.2d at 558.
Id. at 805. As in the present case, the jury instruction contested in Adams was provided in response to a question from the jury. This type of supplemental charge must not be considered independently, but as an addition to the original instruction. Id., quoting 17.S. v. L’Hoste, 609 F.2d 796, 805 (5 Cir.), cert. denied, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). Considering the circumstances of this case, I find no indication that the jury was misled, much less to the point where it was prevented from dispensing justice.
First, the trial court’s initial instructions correctly stated that the plaintiff was required to establish by a preponderance of the evidence “that degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians practicing in the same medical specialty as that in which the defendant practices.” The supplemental instruction at issue was provided during deliberations when the jury asked merely: “Please elaborate/explain the Question # 1 in further detail of the ‘Ver- *332 diet Sheet’.” Question # 1 inquired only: “Do you find, by a preponderance of the evidence, that the plaintiffs provided the applicable standard of care owed by Dr. Dalmacio Paraguya to James Pickering?” Neither Question # 1 nor the jury’s inquiry suggest that the jury’s inquiry related to whether the standard of care was a local one or a national one. To draw an inference of intent from these general statements is speculative. The jury’s question could have been equally directed to the “preponderance of the evidence” portion of the question.
|3Further, the trial court’s supplemental instruction in response to the jury’s inquiry was a lengthy one, with the objectionable phrase included only at the end of the statement, after setting forth the standard of La.R.S. 9:2714. The trial court responded:
Question number 1 is a question that is drawn from our own Revised Statute 9:2714 which is the statute governing malpractice in this case. And it reads as follows: ... “The plaintiff must prove the degree of knoivledge and skill possessed or degree of care ordinarily exercised by physicians licensed to practice in the State of Louisiana and actively practicing in similar community or locale and under similar circumstances, and whether defendant practices in a particular specialty and whether last act of medical negligence raised issues peculiar to the medical specialty involved. Then the plaintiff has the burden of proving the degree of care ordinarily practiced by a physician who treats diabetic foot ulcers within the involved medical specialty.”
And basically, you have to rely on the testimony of the many expert doctors that testified on both sides. You can look at other evidence in the record and you can consider what the lawyers argued to you even though it’s not evidence to assist you in trying to determine whether or not the plaintiffs have proved that there is a standard of care for treating ulcers, diabetic foot ulcers in this locale and what that standard is.
Now, the time period in question is the treatment period when — from April the 2nd to August the 29th, the period of time that Dr. Paraguya treated Mr. Pickering. And it could be a standard developed during anytime during that period. If you find that any time during that period, from April the 2nd through August 29th, '96, I think it was, that there was a standard that Dr. Paraguya was required to maintain in the treatment of the diabetic ulcers to Mr. Pickering; then you must answer the question, yes.
If you find during that time period that there was not a required standard expected of a physician treating diabetic foot ulcers, then you answer the question, no. And that ends the considerations.
If you answer yes, then you go to the next question. So, it can be any time period between April the 2nd and August the 29th. Okay? It doesn’t have to be the whole time period. It can be any time period during that treatment process. Okay? And you have to rely upon your recollection of the testimony and your recollection of the evidence that was presented and your recollection, if you find that the arguments of counsel assists you of that; and then, you make a decision whether or not there was a standard. And did they prove that standard. Okay?
|4A11 right. Now, I’m going to file this supplemental jury instruction that I read to you and I further explained it. So, then you go back and continue delib *333 eration with regard to question number 1.
(Emphasis added.) In my view, the trial court’s reference to the treatment of “diabetic foot ulcers in this locale,” was limited and outside of the formal instruction.
The plaintiff and the majority contend the erroneous supplemental instruction requires a de novo review in light of Todd v. Sauls, 94-10 (La.App. 3 Cir. 12/21/94), 647 So.2d 1366, writs denied, 95-206, 95-219 (La.3/24/95), 651 So.2d 289, a case also involving the national standard of care. However, in its initial instruction to the jury, the trial court in Todd, 647 So.2d at 1371, explained that:
In a malpractice action based on the negligence of a licensed physician, such as Dr. F. Clark Sauls, the plaintiff has the burden of proving first the degree of knowledge and skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the State of Louisiana and actively practicing in a similar community or locale and under similar circumstances and where the defendant practices any particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty. The degree of care ordinarily exercised is the degree of care that the physician gave his other patients when he performed this procedure.
The Todd panel concluded this instruction required reversal as it coupled the competing local and national standards with the defendant’s name, before concluding that, in light of this inclusion, “the jury was misled by that juxtaposition.” Id. The panel also found that the reference to “similar community or locale” was only “heightened” by the fact that all three of the plaintiffs medical experts were from outside of Louisiana whereas a number of the defendant’s experts were from within Louisiana with the majority from Alexandria, the defendant’s locale of practice. Id. at 1372. In sum, it was determined that “this differentiation misled the jury.” Id,. The panel, therefore, conducted a de novo review.
laHowever, the circumstances in this case render Todd distinguishable from this situation. Here, the trial court initially instructed the jury correctly; the problem only arose with a supplemental instruction. Also, the Todd panel based its opinion, in part, on the coupling of the defendant’s name with the local standard. The majority references this point. However, Dr. Paraguya’s name was not inserted into the instruction as in Todd. And again, the reference to the locality standard was limited when taken in context of the instruction as a whole. Finally, the jury in this matter ultimately determined that the plaintiff, in fact, established the standard of care. This finding is supported by the record, thus revealing no indication that the jury was likely misled.
The plaintiff presented two options for standard of care, including the opinions of Dr. Michael Cooperman and Dr. Ralph Donald Patman, who each testified as to the existence of a national standard of care. However, the plaintiff also presented, by way of cross-examination during its case, the defendant. Dr. Paraguya testified that, at the time he treated Mr. Pickering, nationwide standards for the treatment of diabetic foot ulcers were not yet established. Instead, he explained that there were basic principles in ulcer management and that they were dependent on the physician’s judgment given the plaintiffs presentation. He specifically disagreed that many of the standards set forth *334 by Dr. Cooperman were appropriate in the present case given Mr. Pickering’s condition as he presented at each of his appointments.
In short, the jury could have accepted the defendant’s assertion that nationwide standards had not yet been established. Unlike in Todd, the initial contest in this case was whether there was, in fact, a nationwide standard. In this sense, Todd’s focus on whether the jury could have been misled by the jury’s instructions when the experts were primarily from outside of Louisiana differs from the present case.
^Additionally, as the trial court observed when providing the supplemental jury instruction, the critical inquiry for the jury became whether there was proof of the standard of care at the time of the August 29th visit and whether that standard was breached. The jury was presented with starkly different accounts of Mr. Pickering’s foot on that date. As described by Mr. Pickering’s family members, Mr. Pickering’s heel ulcer was obviously advanced at the time of the August 29th visit. They explained that the heel-ulcer was “oozing” and had a pronounced odor at the time of the examination. Yet, the defendant’s record describes the ulcer as unchanged. Dr. Paraguya denied that he would have or could have overlooked the type of ulcer described by Mr. Pickering’s family. The defendant admitted that had he done so, he would have breached the standard of care.
Given his admission that he would have breached the applicable standard of care if the ulcer was as pronounced as the plaintiff urges, it seems clear that the jury could have either believed or discounted the plaintiffs version of events. Also, the jury could have found that Dr. Paraguya set forth the applicable standard of care under these circumstances. It could have done so without having been misled by the jury instructions.
Further, the record reveals no manifest error in the jury’s subsequent determination that the plaintiff failed to establish a breach of the standard of care. See Adams, 983 So.2d 798. First, the jury could have chosen to place little weight on, or afford little credibility to, the deposition testimony of Mr. Pickering and that of his family regarding the deteriorated condition of the heel ulcer. Instead, it could have favored Dr. Paraguya’s testimony as well as his notations from the August 29th visit. The notes indicate that, instead of obvious deterioration, the wound was unchanged. Although Mr. Pickering’s condition clearly deteriorated by the time of his admission |7to the hospital on September 6th, testimony was presented supporting the view that such a rapid demise was possible in a diabetic foot ulcer. Finally, the Medical Review Panel opinion was entered into evidence and revealed the following decision: “The evidence does not support the conclusion that the defendant, Dr. Dalmacio S. Paraguya, failed to comply with the appropriate standard of care as charged in the complaint.” The panel’s written reasons indicate:
A vascular work up was not indicated since most diabetics at this stage of diabetic foot disease do not have palpable pedal pulse. Revascularization often fails due to small vessel disease common to diabetics.
Hospital records indicate that the patient received diabetic education including foot care.
Dr. Paraguya did do a chemical de-bridement with Elase at the appropriate time, and later also did surgical debridement.
A second ulcer would not trigger the need for more aggressive treatment absent any signs of acute infection.
*335 On the August 29, 1996, visit when the patient presented complaining of nausea and vomiting, Dr. Paraguya noted “Right foot ulcer anteriorly continues to improve. The ulcer in the right heel is unchanged.” We do not feel that the patient was septic at the time due to lack of signs of acute infection in the foot, and if the patient were septic he would have been expected to develop vascular collapse prior to the September 6,1996 hospitalization.
In light of this evidence, I conclude that the record supports the jury’s determination that the plaintiff failed to satisfy its burden of proving breach of the applicable standard of care.
Finally, I reject the plaintiffs assertion, and the majority’s conclusion, that the error in the trial court’s jury instruction was compounded by the reference to the premise that a treating physician’s testimony is generally accorded more weight than that of a physician who reviews records for purposes of testifying at trial. This instruction provided: •
IxThe testimony of a treating physician is generally accorded more weight than that of a physician who merely examines records for purposes of testifying at trial.
The trial court addressed the plaintiffs argument that this instruction should be inapplicable when the defendant is the treating physician and noted that the plaintiff also presented the testimony of Dr. Shakeel Sandozi, Mr. Pickering’s subsequent treating physician, who testified in favor of the plaintiff. The colloquy on this point reflects:
MR. TOWNSLEY:
... We had an objection to a paragraph on page four. It’s the second full paragraph. And it says, quote, “The testimony of the treating physician is generally accorded more weight than that of a physician who merely examines records for purposes of testifying at trial.”
It’s my position, Judge, that that is an appropriate charge for a personal injury case, an auto accident case or Worker’s Compensation case. It’s not an appropriate charge for a medical malpractice case. And you can see why, Judge, its — Paraguya was the treating physician. And so, you are instructing the jury to give him more weight than all of the other physicians who came in here to testify. That’s inappropriate in a malpractice case, and I think it could be extremely harmful and prejudicial to the jury here.
THE COURT:
You know, I thought about that; however, one of the issues is whether or not the time period for the onset of this infection started prior to August 29th, certainly prior to September 6th when he [was] brought too [sic] Memorial Hospital — Moss Regional Hospital. And in fact, the treating physician that did the surgery at Moss indicated he thought it was around about the 20lh or earlier that it started. So, that worked both ways. The doctor that testified for the Plaintiff was a treating physician on that question, and that’s a very important question. I think that is, perhaps the key issue in the case, whether or not the doctor should have seen something on the 29Ul of August, an infection, according to your treating physician that did the surgery said had to exist at that time.
So, I think it worked both ways. So, I decided to leave it in because in this particular case, it goes both ways. Dr. Paraguya is a treating physician, but most of the stuff that he testified about would come down to the 29th, what he saw, should have seen on the 29th. So, I think it works for the Plaintiff as well.
*336 | <¡While the majority discounts this reasoning, I find no error therein as it accurately reflects a jurisprudential presumption and, again, two treating physicians testified in this case. The charge referred generally to the treating physician and did not specifically reference either of the two treating physicians presented. The above colloquy occurred outside the presence of the jury. Moreover, this charge was part of the initial instructions and was not a part of the supplemental instruction at issue. In my view, these factors militate against the conclusion of the majority, that this instruction magnified the trial court’s error in the supplemental instruction.
As I find that a de novo review is not warranted and that the record supports the jury’s determination in favor of the defendant, I respectfully dissent from the majority opinion.