STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0017

RYAN M. MARTINEZ

VERSUS

TREVOR M. WILSON, CHEVY'S INC., ABC INSURANCE COMPANY
AND DEF INSURANCE COMPANY

**Judgment Rendered:** SEP 2 7 2019

* * * * * *

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Suit Number 2008-0000664

Honorable Charlotte H. Foster, Presiding

* * * * * *

| | |
|---|---|
| Paul A. Lea, Jr.<br>Covington, LA | Counsel for Plaintiff/Appellee<br>Ryan M. Martinez |
| Nicole R. Dillon<br>Glen R. Galbraith<br>Hammond, LA | Counsel for Defendant/Appellant<br>Trevor M. Wilson |

* * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY, AND CRAIN, JJ.

**GUIDRY, J.**

In this personal injury action, defendant, Trevor Wilson, appeals from a judgment of the trial court awarding plaintiff, Ryan Martinez, damages in the amount of $35,128.66. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 12, 2007, Martinez was a patron at Chevy's, Inc. (Chevy's). While attempting to break up a fight between his friend, Christopher Forvendel, and Wilson, Martinez was struck in the face. Thereafter, on February 29, 2008, Martinez filed a petition for damages, naming Wilson, Chevy's, and their respective insurers as defendants. Martinez alleged that Wilson punched him in the left cheek, resulting in a mandible fracture, which required his jaw to be wired shut for approximately eight weeks and resulted in him losing thirty pounds, rendered him unable to eat solid foods, prevented him from speaking, prevented him from working, and forced him to drop two classes in which he was enrolled as a student. Martinez asserted that Wilson was liable for battery, entitling him to damages, including without limitation, present and future medical expenses, loss of income, and mental pain and suffering.[1]

Thereafter, counsel for Martinez filed a motion for preliminary default, which the trial court granted on May 27, 2008. Following a hearing to confirm the default judgment, the trial court signed a judgment in favor of Martinez, awarding him special and general damages. Wilson appealed the trial court's judgment to this court, and we vacated the judgment, finding that Martinez had failed to produce sufficient evidence to establish a prima facie case, and remanded the

---

[1] Martinez also asserted claims of negligence on the part of Chevy's and/or its employees. However, Chevy's was subsequently dismissed from the action pursuant to a judgment granting its motion for summary judgment, wherein the trial court found that there was no basis of liability in tort, whether negligent or intentional, against Chevy's as a matter of law. This judgment was affirmed by this court in Martinez v. Wilson, 09-0442 (La. App. 1st Cir. 10/23/09) (unpublished opinion).

matter to the trial court for further proceedings. Martinez v. Wilson, 15-0384, pp. 6-7 (La. App. 1st Cir. 12/17/15), 185 So. 3d 65, 69.

On January 4, 2016, Wilson filed an answer to Martinez's petition, denying the allegations and raising affirmative defenses, including self-defense, failure to mitigate damages, and comparative fault of Martinez, Forvendel, and Chevy's. Following a one-day bench trial, the trial court signed a judgment on January 12, 2017, in favor of Martinez and against Wilson, finding Wilson was an intentional tortfeasor pursuant to La. C.C. art. 2323, and awarding damages (special and general) to Martinez in the amount of $35,128.66. In reasons for judgment issued on January 31, 2017, the trial court noted that its reference to La. C.C. art. 2323 was in error, and found Wilson to be 100 percent at fault. On the same date, the trial court signed an amended judgment, finding in favor of Martinez and against Wilson and again awarding damages (special and general) to Martinez in the amount of $35,128.66, but stating that Wilson is to be given credit for any restitution he has previously paid to Martinez in connection with this matter.

Thereafter, Wilson filed a motion and order of appeal. However, since the amount of the credit was not apparent from a reading of the judgment, this court found the amount of damages was not stated with certainty and precision, and the January 12, 2017 judgment was not a valid, final judgment. Accordingly, this court dismissed the appeal. See Martinez v. Wilson, 17-0922, p. 4 (La. App. 1st Cir. 4/3/18), 248 So. 3d 406, 409.

On June 25, 2018, in response to a motion to correct judgment, the trial court heard argument from counsel and granted judgment as per this court's ruling. This judgment, signed July 9, 2018, found in favor of Martinez and against Wilson and awarded damages (special and general) to Martinez in the amount of $35,128.66, plus court costs and legal interest from the date of demand. Wilson now appeals from the trial court's July 9, 2018 judgment, contending that the trial court erred in

3

failing to find Martinez committed an intentional tort by intentionally inserting himself into a hostile situation, in failing to apportion fault to Martinez and other actors, in failing to find Wilson acted in self-defense, and in its award of damages.

## DISCUSSION

### Liability

**Standard of Review**

An appellate court's review of factual findings is governed by the manifest error-clearly wrong standard. Stobart v. State, Department of Transportation and Development, 617 So. 2d 880, 882 (La. 1993). As such, an appellate court may not reverse a trial court's factual determinations unless, after reviewing the record in its entirety, it determines: 1) a reasonable factual basis does not exist for the finding of the trial court; and 2) the record establishes that the finding is clearly wrong. Stobart, 617 So. 2d at 882.

Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the trier of fact's conclusion was a reasonable one. Stobart, 617 So. 2d at 882. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989). Accordingly, where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So. 2d at 844.

Further, when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the fact finder can be aware of the variation in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, 549 So. 2d at 844. Indeed, where the fact finder's

4

determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Adams v. Rhodia, Inc., 07-2110, p. 11 (La. 5/21/08), 983 So. 2d 798, 807.

## Comparative Fault

Wilson asserts on appeal that the trial court erred in failing to find Martinez committed an intentional tort and in failing to apportion fault to Martinez and other actors. Louisiana Civil Code article 2323(A) provides that "[i]n any action for damages where a person suffers injury, death, or loss, the ... fault of all persons causing or contributing to the injury, death, or loss shall be determined." Furthermore, La. C.C. art. 2323(B) provides, in pertinent part, that "[t]he provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability." Louisiana embraces a broad civilian concept of "fault" that encompasses any conduct falling below a proper standard of care, including intentional torts. Landry v. Bellanger, 02-1443, p. 6 (La. 5/20/03), 851 So. 2d 943, 949. Thus, the application of comparative fault under La. C.C. art. 2323 requires that the fault of both negligent and intentional tortfeasors be assessed by the fact finder. Specialized Commercial Lending, Inc. v. Murphy-Blossman Appraisal Services, L.L.C., 07-0100, p. 16 (La. App. 1st Cir. 11/2/07), 978 So. 2d 927, 938. However, La. C.C. art. 2323(C) provides:

> Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

Therefore, as between a negligent plaintiff and an intentional tortfeasor defendant, the plaintiff's recovery for damages may not be reduced. La. C.C. art. 2323(C). However, when a plaintiff and another individual's actions are negligent, the plaintiff's recovery may be reduced in accordance with his own fault vis-à-vis

5

the negligent tortfeasor, while no reduction is made in favor of the intentional tortfeasor. See Specialized Commercial Lending, Inc., 07-0100 at p. 16, 978 So. 2d at 939. Furthermore, when the plaintiff and the defendant are both intentional actors, La. C.C. art. 2323(C) is inapplicable and the fault of the intentional actors may be compared. See Landry, 02-1443 at p. 14, 851 So. 2d at 954.

In instituting his action, Martinez asserted that Wilson was liable to him for damages resulting from a battery. Although the July 9, 2018 judgment does not specifically find Wilson to be an intentional tortfeasor, the judgment does rule in favor of Martinez and against Wilson on the only cause of action, an intentional tort, presented to the court between these two parties. Accordingly, because a finding that Martinez is also an intentional tortfeasor would permit consideration of his fault, Wilson asserts on appeal that the trial court erred in failing to find that Martinez was an intentional tortfeasor and in failing to apportion fault to Martinez or other actors.

Wilson, Martinez, and several witnesses who were present at Chevy's on the night of the altercation testified at trial. Wilson testified that he had been drinking on the night of the altercation. He stated that he and his girlfriend were walking to the dance floor when, as he walked through the crowd, his elbow hit a girl. According to Wilson, the girl became irate with him, he called her a name, and she walked off saying she was going to get her boyfriend. Wilson stated that her boyfriend and two other guys came over and words were exchanged. Wilson stated that as the parties were yelling and exchanging words, Martinez walked in between him and the other guys, shoved him in the chest, and he reacted by punching Martinez in the face. Connie Vicknair, Wilson's girlfriend at the time of the altercation, also testified to essentially the same facts regarding the altercation as Wilson.

6

Martinez, on the other hand, testified that on the night of the altercation, he was leaving Chevy's when he saw his friend, Forvendel, and Wilson standing really close to each other. Martinez stated that he walked toward them to make sure that everything was okay, Wilson looked at him and then at Forvendel, and then Wilson pushed Forvendel on the ground. According to Martinez, he saw Wilson back up and make a circle, so he put his hands out, and for what felt like fifteen seconds, Wilson just stood there, then all of a sudden, Wilson launched across the floor and punched him in the left side of his face. Martinez stated that he did not threaten Wilson, raise his voice, or touch or lay a hand on Wilson. Rather, Martinez stated that he merely held his hands out, one toward Forvendel and one toward Wilson.

Sydney Devincent testified that he was on the dance floor at the time of the altercation. He had approached Forvendel, who said that Wilson told him he wanted to start an altercation with someone due to them bumping into each other. Devincent stated that he talked to Wilson to see what the problem was, and at that point, Wilson pushed Forvendel and took a swing at him but missed. According to Devincent, Wilson then backed up, walked in a big circle around the dance floor and was six to seven feet away from Martinez when Martinez said "hold on" and Wilson then launched from across the floor and punched Martinez. Devincent stated that Martinez never threatened Wilson and was not involved in the altercation other than to put his hands up to try to calm everyone down. Devincent further stated that the assault was completely unprovoked and the most Martinez ever said was "whoa" when he put his hands up.

Forvendel also testified at trial. According to Forvendel, a friend of his kept getting bumped into on the dance floor, Forvendel politely asked Wilson if he could watch what he was doing, and "it got way out of hand." Forvendel stated that Wilson started getting loud and obnoxious, and it seemed like Wilson was

really intoxicated. Forvendel stated that Wilson started screaming that he was a mixed martial arts fighter and could fight anyone there, so everyone backed off and it kind of calmed down for a second. According to Forvendel, Martinez then stepped in and put his hands up in an effort to calm everyone down and that is when Wilson hit him. Forvendel stated at that time, Wilson was across the dance floor seven to eight feet, and the whole dance floor had made a circle. Forvendel stated that Martinez was not threatening Wilson and did not yell at Wilson or raise his hand like he was going to strike him. Forvendel further stated that Martinez never pushed or punched anyone in the chest.

Finally, the deposition testimony of Casey Zeller was admitted into evidence at the trial. Zeller worked at Chevy's on the night of the altercation and was friends with Martinez. Zeller stated that after she was relieved from her post that night, she was walking around the club and ran into Martinez and a couple of his friends. Zeller stated that when she walked up, they were talking to what seemed to be a very aggravated individual, who she later found out was Wilson. Zeller stated that Martinez and Devincent were trying to calm Wilson down, but Wilson had his jaw clenched and fists tightened. Zeller stated that the next thing she knew, Wilson pushed Forvendel and swung at Devincent, but Devincent managed to move out of the way. However, Zeller stated that Wilson ended up punching her in the ribs. Zeller stated at that point, Martinez backed everyone away, trying to protect them. Zeller stated that a circle was made on the dance floor and Martinez and Wilson were about seven or eight feet away from each other. According to Zeller, Martinez had his arms out protecting the crowd and trying to calm the situation, but he did not say or do anything. Zeller said Wilson then lunged across the seven feet of space and punched Martinez in the face.

According to the record, the trial court was clearly presented with conflicting testimony as to the circumstances surrounding the altercation and

whether Martinez touched Wilson, and we cannot say from our review of this testimony that the trial court was manifestly erroneous in deciding to credit the testimony of Martinez and the witnesses called on his behalf that Wilson was at fault in causing the altercation and Martinez's resulting injuries. As such, we find no error in the trial court's failure to find Martinez committed an intentional tort[2] or in its failure to apportion fault to Martinez. See La. C.C. art. 2323(C).

Additionally, we find no error in the trial court's failure to apportion fault to any of the other above actors. The trier of fact is owed great deference in its allocation of fault. Blake v. City of Port Allen, 14-0528, p. 11 (La. App. 1st Cir. 11/20/14), 167 So. 3d 781, 790. From our review of the conflicting testimony in the record, we cannot say that the trial court was manifestly erroneous in failing to find that any of these individuals, who were not named as parties to this litigation, were negligent in causing the subject altercation and Martinez's resulting damages.

**Self-Defense**

Wilson also asserts on appeal that he is not at fault for hitting Martinez because he acted in self-defense, and the trial court erred in failing to so find. When a plaintiff has proven all the prima facie elements of an intentional tort, the defendant may seek to prove that he is without fault because his actions were privileged or justified. Landry, 02-1443 at p. 15, 851 So. 2d at 954. Self-defense is a true defense that operates as a privilege to committing the intentional tort. In order to succeed on a claim of self-defense (not involving deadly force), there must be an actual or reasonably apparent threat to the claimant's safety, and the force employed cannot be excessive in degree or kind. Landry, 02-1443 at pp. 15-16, 851 So. 2d at 954-55.

---

[2] A battery is a harmful or offensive *contact with a person*, resulting from an act intended to cause the plaintiff to suffer such a contact. Landry, 02-1443 at p. 6, 851 So. 2d at 949. As the trial court did not find that Martinez touched Wilson, an essential element of the intentional tort of battery is lacking.

9

According to Wilson, he felt like he was "about to get beat up" when Martinez, Devincent, and Forvendel approached him on the dance floor. Wilson stated that they were all face-to-face and that there was not a big open space separating them. Wilson stated that while he was speaking with one of the other guys, Martinez reached in and pushed him in the chest, and he reacted and defended himself. Wilson acknowledged that he thereafter hit two people, including Martinez.

However, as noted above, Martinez and several other witnesses testified that Martinez did not threaten or yell at Wilson, nor did he touch Wilson. Rather, they all testified that Martinez merely held his arms out in an attempt to calm everyone down. They also stated that approximately seven to eight feet of space separated Wilson from Martinez on the dance floor, and that Wilson "launched" or "lunged," unprovoked, across the dance floor and struck Martinez.

From our review of the conflicting testimony in the record as to whether there was an actual or reasonably apparent threat to Wilson's safety, we cannot say that the trial court was manifestly erroneous in choosing to credit the testimony of Martinez and his witnesses and in failing to find that Wilson acted in self-defense.

### Damages

The July 9, 2018 judgment at issue awarded $35,128.66 in special and general damages to Martinez. General and special damages may be awarded in globo, and such an award will not be set aside absent an abuse of discretion. Johnson v. Henry, 16-0271, p. 3 (La. App. 1st Cir. 10/31/16), 206 So. 3d 916, 919. Such a lump sum judgment is presumed to award all items of damages claimed. Bryan v. City of New Orleans, 98-1263, p. 2 (La. 1/20/99), 737 So. 2d 696, 697. When a lump sum award is challenged as excessive, the appellant's burden of proving the fact finder abused its discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily

10

ascertainable. Bryan, 98-1263 at p. 3, 737 So. 2d at 698. Each case must be determined on its own facts and circumstances, and we must examine each element of damage claimed to determine if there was an abuse of discretion. Johnson, 16-0271 at p. 4, 206 So. 3d at 919.

In the instant case, Martinez sought damages for present and future medical expenses, loss of income, and mental pain and suffering. At trial, Martinez testified that he went to North Oaks Health System (North Oaks) on the day of the altercation, where he was examined and x-rays were taken, revealing that his jaw was broken. Martinez stated that he was also prescribed pain medication. Later that day, Martinez sought treatment from his dentist, Dr. James Loyola, who confirmed that Martinez had a fractured jaw and wired his jaw shut. Martinez stated that his jaw was wired shut for eight or nine weeks, and during this time, he had headaches, had difficulty talking, was uncomfortable, and was hurting a lot of the time. He stated that while his jaw was wired shut, he could not eat, so he drank smoothies from Smoothie King three times a day. Martinez admitted into evidence a receipt from Smoothie King, which represented the amount he spent each time he purchased a smoothie. According to Martinez, he felt like he was starving to death, and he drank the smoothies to try to "bulk up" because he was losing a lot of weight. Martinez stated that he ultimately lost thirty pounds as a result of his jaw being broken and wired shut.

Additionally, Martinez, who was a student at Southeastern Louisiana University, stated that he was taking four classes, but following the altercation, he had to drop two classes because his grades were slipping and he could not keep up. Martinez stated that he also had to quit the Southeastern cheer team, because it was football season and he was unable to yell at the games. Additionally, Martinez stated that he was on two all-star cheerleading teams, and while he remained on those teams, he could not hold girls up anymore, could not do pyramids, and had to

11

be moved in the routine. Martinez stated that he was made fun of by his teammates. Finally, Martinez stated that he had a girlfriend at that time, and while he acknowledged that he took her to a Saints game in November 2007, he stated that he was unable to do a lot of things with her.

Martinez also entered the deposition of Dr. Loyola into evidence at the trial. Dr. Loyola stated that he examined Martinez on October 12, 2007, determined that Martinez had a fractured jaw, and wired Martinez's jaw shut. Dr. Loyola stated that during the time Martinez's jaw was wired shut, he tightened the wires a few times. With regard to pain, Dr. Loyola stated that once the bones are held together by the wires, it usually does not hurt that much anymore. However, Dr. Loyola acknowledged that Martinez did not have a comfortable bite before the injury, and that it was much less comfortable after his jaw was fractured and wired closed. According to Dr. Loyola, the real issue was Martinez's ability to feed himself, and while he did not document any weight loss in his records, he acknowledged that it is almost certain that people lose weight in these circumstances. Dr. Loyola also stated that while Martinez was able to talk, he placed activity restrictions on Martinez, which included no strenuous exercising or running. Dr. Loyola stated that on November 28, 2007, he released Martinez's jaw, and it was no longer wired shut. Dr. Loyola stated that after this date, Martinez was free to use his mouth, and all remaining hardware was ultimately removed on December 6, 2007.

From our review of the testimony and documentary evidence in the record, Martinez did not present any evidence establishing that future medical care was needed, nor did he present any evidence substantiating a loss of income. Therefore, the damages awarded by the trial court represent special damages for Martinez's past medical expenses and Smoothie King expenses and general damages for Martinez's pain and suffering. Based on our review of the testimony, medical bills from North Oaks and Dr. Loyola, and the receipt from Smoothie

12

King, we find no abuse of the trial court's discretion in awarding Martinez $35,128.66 in damages for the injury sustained in this case.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Trevor M. Wilson.

**AFFIRMED.**