# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-686

**SHERRY WEDGEWORTH, ET UX.**

**VERSUS**

**TYNES E. MIXON, III, M.D.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 122402
HONORABLE KEITH R. J. COMEAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**PHYLLIS M. KEATY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**David W. Ardoin**
**Carson McKowen**
**Matthew D. Ory**
**Ardoin, McKowen & Ory, LLC**
**505 W. Third Street**
**Thibodaux, Louisiana  70301**
**(985) 446-3333**
**Counsel for Plaintiffs/Appellants:**
  **Sherry Wedgeworth**
  **James Wedgeworth**

**Andrew H. Meyers**
**Breaud & Meyers**
**Post Office Box 3448**
**Lafayette, Louisiana  70502**
**(337) 266-2200**
**Counsel for Defendant/Appellee:**
  **Tynes E. Mixon, III, M.D.**

**KEATY, Judge.**

Plaintiffs/Appellants, Sherry Wedgeworth and James Wedgeworth, appeal the trial court's judgment in favor of Defendant/Appellee, Tynes E. Mixon, III, M.D. For the following reasons, the trial court's judgment is affirmed.

**FACTS & PROCEDURAL HISTORY**

This medical malpractice suit arises from complications occurring after Mrs. Wedgeworth underwent a revision functional endoscopic sinus surgery (FESS procedure)[1] performed by Dr. Mixon, a board-certified otolaryngologist/ear, nose, and throat (ENT) physician, on February 1, 2012. Her revision surgery arose from recurring sinusitis which she experienced since 2006 when she began treating with him. Prior to this revision surgery, Dr. Mixon performed a FESS procedure on Mrs. Wedgeworth in 2009.

As to the FESS procedure at issue, on February 2, 2012, the pathologist who examined Mrs. Wedgeworth's infected tissue that was removed during her revision sinus surgery advised Dr. Mixon that it contained a small fragment of brain tissue. Dr. Mixon subsequently called Mrs. Wedgeworth, who had already been discharged from the hospital following a one-night, post-surgery stay. During their telephone conversation, Dr. Mixon advised her of the pathologist's report, explained the risks for infection, recommended a computerized tomography (C.T.) scan, and recommended hospital admission. Mrs. Wedgeworth declined hospital admission but agreed to return to Dr. Mixon's office the following day.

During her February 3, 2012 office visit, Dr. Mixon examined Mrs. Wedgeworth and again recommended a C.T. scan and hospital admission,

---

[1] The terms "FESS procedure" and "sinus surgery" are used interchangeably throughout this opinion.

although she declined. Mrs. Wedgeworth was admitted to the hospital three days later on February 6, 2012, following another visit to Dr. Mixon's office where she stated that she was feeling poorly. She was initially admitted to Iberia Medical Center and subsequently transferred to Our Lady of Lourdes Regional Medical Center (OLOL). Mrs. Wedgeworth remained at OLOL, and, on February 9, 2012, she began experiencing symptoms of aphasia and was subsequently diagnosed with cerebritis, a brain infection.

As a result, Mrs. Wedgeworth filed a medical malpractice claim for review pursuant to La.R.S. 40:1299.41-.49. On March 22, 2013, a three-member medical review panel unanimously ruled in favor of Dr. Mixon. Plaintiffs subsequently filed a Petition for Damages on April 17, 2013 against Dr. Mixon, alleging that he breached the standard of care by failing to properly perform the revision sinus surgery and by failing to properly monitor and treat her post-surgery. Mr. Wedgeworth sought damages for loss of consortium, services, and society.

Following a civil jury trial which occurred from September 29, 2014, through October 2, 2014, the jury ruled in favor of Dr. Mixon. On October 15, 2014, the trial court signed a judgment dismissing all claims against Dr. Mixon with prejudice in accordance with the jury verdict. Plaintiffs subsequently filed a Motion For Judgment Notwithstanding Verdict Or Alternatively New Trial on October 22, 2014. Following a hearing which took place on January 6, 2015, the trial court orally denied Plaintiffs' motions, which ruling was reduced to writing and signed by the trial court that same day. Plaintiffs appealed.

On appeal, Plaintiffs assert the following two assignments of error:

1. The trial court erred by not instructing the jury that negligence is malpractice within the context of a medical malpractice action and by not ordering the jury to consider damages when the jury asked:

2

"Is there a way that the Plaintiff can be awarded damages without the Dr. being found guilty of malpractice? All members are in agreement of neghince [sic] but not malpractice."[2]

2. The trial court erred by not granting a Judgment Notwithstanding Verdict or new trial when the jury's verdict was usurped by the [trial] court's response to the jury's question and statement.

## DISCUSSION

### I. First Assignment of Error

#### A. Standard of Review

Plaintiffs' first assignment of error deals with allegedly erroneous jury instructions. An appellate court "may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong[.]'" *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (quoting *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978)). Jury instructions are generally reviewed under the manifest error standard of review. *See Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507. An appellate court must exercise great restraint before reversing a jury verdict based on erroneous jury instructions. *Adams v. Rhodia, Inc.*, 07-2110 (La. 5/21/08), 983 So.2d 798. "Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law." *Id*. at 804. When a jury is erroneously instructed, however, "and the error probably contributed to the verdict, an appellate court must set aside the verdict." *Id*. An appellate court assesses an allegedly erroneous jury instruction "in light of the entire jury charge to determine if the charges adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence

---

[2] We note that although Plaintiffs use the word "negligence" in their appellate brief, the jury question contained in the record shows that "negligence" was misspelled, i.e., "neghince". We accept "neghince" to mean "negligence."

and whether the charges adequately guided the jury in its deliberation." *Id*. at 804. "[T]he determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice." *Id*. (quoting *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 8 (La. 8/31/00), 765 So.2d 1017, 1023).

Additionally, "when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial." *Id*. at 805. "[T]he manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts." *Id*. Therefore, the mere discovery of an error in the judge's instructions on appellate review of a jury trial does not warrant the appellate court to conduct "the equivalent of a trial *de novo*, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case." *Id*. In cases wherein supplemental charges are given by the judge, "'[t]he supplemental charge must be considered as an addition to the original instruction rather than as an independent charge. As long as the combined charges accurately cover the point of law at issue, no reversible error exists.'" *Id*. (quoting *United States v. L'Hoste*, 609 F.2d 796, 805 (5th Cir. 1980)).

## B. Allegedly Erroneous Jury Instructions

In their first assignment of error, Plaintiffs contend that the trial court erred by not informing the jury that negligence equates to malpractice with respect to a medical malpractice suit. This alleged error, according to Plaintiffs, occurred during the middle of the jury deliberations when it sent the following note to the trial court: "Is there a way that the Plaintiff can be awarded damages without the Dr. being found guilty of malpractice? All members are in agreement of neghince

4

[sic] but not malpractice." Over Plaintiffs' objection, the trial court answered "no" and then instructed the jury to return to deliberations. Plaintiffs argue that the trial court's response was incorrect and that it should have instructed the jury to consider damages at that point.

In opposition, Defendant contends that the trial court's foregoing supplemental charge was an adequate response to the jury's question and that its response was correct when compared to the jury instructions as a whole and the circumstances of the case. Defendant alleges that the supplemental charge failed to taint the jury's verdict. We agree based upon the evidence contained in the record and the law regarding jury charges.

Pursuant to La.Code Civ.P. 1792(B), when charging the jury following trial of the matter and presentation of all of the evidence and arguments, the trial court "shall instruct the jurors on the law applicable to the cause submitted to them. . . . reduce such instructions to writing. . . . [and] instruct the jury that it may take with it or have sent to it a written copy of all instructions and charges . . . ." The lengthy jury instructions contained in the trial transcript show that following trial and after presentation of all of the evidence and arguments, the trial court complied with the requirements of La.Code Civ.P. art. 1792(B). The transcript reveals that after the trial court instructed the jury, the jury retreated to deliberate. During the deliberations, the transcript shows that the trial court received the note at issue and read it aloud to both parties' counsel. According to the transcript, the trial court subsequently opined that the jury may have been "hung up" on question number three of the jury verdict form since it mentions malpractice rather than negligence and that the jury may be misinterpreting "what malpractice and negligence is." Question number three asks, "[d]o you find from a preponderance of the evidence

5

that Dr. Tynes Mixon was guilty of substandard conduct which constitutes malpractice?" Despite the trial court's statement contained in the transcript that question number three "may have not been worded as good as we could have on . . . the verdict form[,]" and that the trial court "may not have instructed them well on that[,]" it held: "I just have to answer the question, which is no, at this particular time."

After the trial court advised the jury of its answer, the transcript and the evidence reveal that the jury sent the trial court another note which asked: "May we review the laws as written?" In response, the trial court sent the jury instructions to the jury room. After deliberations, the transcript shows that the jury found that Dr. Mixon was not guilty of substandard conduct which constitutes malpractice.

We find that the trial court's response to the jury's initial question was not erroneous in light of Louisiana jurisprudence which provides: "Except for determining whether certain types of irregularities have occurred, the law does not permit inquiry into the thought processes by which a jury reached a verdict." *Cosie v. Aetna Cas. & Sur. Ins. Co*., 527 So.2d 1105, 1107 (La.App. 1 Cir. 1988) (citing *Louisiana Farm Bureau Cas. Ins. Co. v. Williams*, 476 So.2d 810 (La.1985)). In their brief, however, Plaintiffs attempt to inquire into the jury's thought process by assuming that the question referred to Dr. Mixon. Plaintiffs' assumption is faulty, however, since the jury could have been referring to Mrs. Wedgeworth's possible comparative negligence in light of question number five on the jury verdict form which states: "Do you find from a preponderance of the evidence that Sherry Wedgeworth was guilty of negligence which contributed to her own damage?" Plaintiffs also presuppose that the jury believed that Dr. Mixon

was guilty of negligence based upon the jury's statement that "[a]ll members are in agreement of neghince [sic]." The foregoing, however, can also be interpreted as meaning that all members were in agreement that there was no negligence on Dr. Mixon's part.

The transcript further shows that the trial court explained the concept of negligence with respect to a medical malpractice matter by stating the following in its instructions to the jury: "In an action such as this, the plaintiff has the burden of proving the negligence of the defendant physician." The record also contains the jury instructions which state the following law regarding negligence under the section heading entitled "**MALPRACTICE**":

> In order to discharge the burden of proving negligence on the part of the defendant, plaintiff must prove:
>
> (1) the degree of knowledge or skill possessed, or the degree of care ordinarily exercised by physicians licensed to practice in Louisiana and actively practicing a particular medical specialty under similar circumstances;
>
> (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care or diligence, along with his best judgment in the exercise of that skill; and
>
> (3) that, as a proximate result of this lack of knowledge or skill, or failure to exercise this degree of care, plaintiff suffered injuries which would not otherwise have been incurred.

Moreover, even though Plaintiffs' counsel objected to the trial court's supplemental jury instruction wherein the trial court said "no," the transcript is void of any objection being made with respect to the original jury instructions. We, therefore, find that the combined charges, i.e., the initial jury instructions and the supplemental charge, accurately covered the point of law at issue. Accordingly, we find that no reversible error exists, and the trial court did not manifestly err in this regard.

7

## II.    JNOV/New Trial

### A.    Standard of Review

Plaintiffs' second assignment of error deals with the trial court's denial of its motion for a judgment notwithstanding the verdict (JNOV) or its alternative motion for a new trial.  "The motion for a [JNOV] may be granted on the issue of liability or on the issue of damages or on both issues." La.Code Civ.P. art. 1811(F). The criteria used in determining whether a JNOV has been properly granted was discussed in *Davis v. Wal-Mart Stores, Inc.*, 00-445, pp. 4-5 (La. 11/28/00), 774 So.2d 84, 89 (citations omitted), as follows:

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict.  The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover.  If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.  In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

The applicable standard of review therefore requires a two-part inquiry. *Id*. First, the appellate court must determine whether the trial court erred in not granting the JNOV by using the foregoing criteria. *Id*.  Second, "[a]fter determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review." *Id*.

With respect to a motion for a new trial, it is granted "[w]hen the verdict or judgment appears clearly contrary to the law and the evidence." La.Code Civ.P. art. 1972(1). When reviewing the grant or denial of a motion for a new trial, an appellate court cannot reverse the trial court's decision unless an abuse of discretion can be demonstrated. *Harbor v. Christus St. Frances Cabrini Hosp.*, 06-593 (La.App. 3 Cir. 11/2/06), 943 So.2d 545.

## B.    Evidence Supporting Verdict

Keeping in mind the foregoing standard of review, Plaintiffs argue in their second assignment of error that the trial court erred by not granting its Motion For Judgment Notwithstanding Verdict Or Alternatively New Trial since the jury's verdict was tainted by the [trial] court's response to the jury's question.

Pursuant to the transcript of the hearing on Plaintiffs' motions, the trial court noted the jury's possible confusion with the terms "malpractice" and "negligence" when it received the jury's note stating that "[a]ll members are in agreement of neghince [sic] but not malpractice." The trial court indicated its problem with the note and attempted to remedy any possible future confusion between the two terms when it stated: "And I'm changing my instructions based on this trial. I'm not going to even mention malpractice anymore in my instruction. It's just going to be medical negligence . . . . [b]ecause I don't want to confuse them based on what happened in this trial." The transcript also shows that the trial court noted that the jury "got the [jury] instructions later in deliberation[s][.]" The transcript reveals that although the trial court was unsure as to whether the jury read the requested instructions, it ruled against Plaintiffs stating: "I don't like to invade the province of the jury. . . . They were given the instructions subsequently. They rendered a

9

verdict. I'm going to deny the judgment notwithstanding the verdict and also the motion for the new trial."

When the jury is the fact finder such as in this case, the following two-part test enunciated in *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993), is employed to determine whether to reverse the jury's determinations:

> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
>
> 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

This test requires review of the entire record to determine the occurrence of manifest error. *Purvis v. Grant Parish Sch. Bd.*, 13-1424 (La. 2/14/14), 144 So.3d 922. "Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one." *Id.* at 926.

In this case, the jury heard the trial testimony of Defendant's expert, Dr. Newland Knight Worley, a board-certified ENT. Dr. Worley testified that he had been practicing for over twenty years, had performed over one thousand sinus surgeries, and taught as an associate clinical professor at Tulane University School of Medicine. He admitted to being a member of the three-member medical review panel which found that Dr. Mixon did not breach the applicable standard of care. Dr. Worley testified as to the medical standards regarding FESS procedures and stated that he formulated his opinion after reviewing the applicable medical charts, documents, Mrs. Wedgeworth's medical records, and the parties' position papers. Dr. Worley testified that an "injury through the skull base to the base of the

10

brain. . . . is a well-recognized complication that can occur even in the best surgeon's hands." He testified that the foregoing complication is listed on the informed consent and that "[t]he fact that it happens during a surgery, in itself, is not a breach of the standard of care." Similarly, Dr. Worley's testimony indicates that an infection developed by a patient post-surgery often occurs without a breach in the standard of care. He concluded that the care provided by Dr. Mixon before, during, and after Mrs. Wedgeworth's surgery was within the applicable standard of care.

Dr. Worley's conclusions were supported by the trial testimony of Dr. Guy P. Zeringue, III, a board-certified ENT and expert witness provided by Defendant. Dr. Zeringue's testimony reveals that he had been practicing for eleven years and was the second member of the medical review panel. Dr. Zeringue stated that he performed approximately two hundred sinus surgeries a year, and he opined that Dr. Mixon did not breach the standard of care with respect to his treatment rendered to Mrs. Wedgeworth before, during, and after surgery. He formulated this opinion, according to his testimony, after reviewing the applicable documents, charts, Mrs. Wedgeworth's medical records, and both parties' position papers. Dr. Zeringue further testified that a brain biopsy, brain damage, and infection are risks associated with undergoing a FESS procedure, and the complications Mrs. Wedgeworth experienced following her revision sinus surgery can occur without breaching the standard of care. Dr. Zeringue testified that if he had been Mrs. Wedgeworth's treating physician and had become aware that during surgery, her skull had been penetrated, which exposed her brain, he would have recommended that she return for a follow-up appointment.

11

Dr. Chester Finley, the third member of the medical review panel, was also presented at trial to testify on behalf of Defendant. In lieu of hearing his testimony, which would have mirrored Dr. Zeringue's trial testimony, the parties stipulated that Dr. Finley's opinion was consistent with that of Dr. Zeringue.

Dr. Mixon also testified at trial, stating that he had been practicing for approximately eighteen years as a board-certified ENT. He indicated that he had performed approximately two thousand FESS procedures during his career. As to his treatment rendered to Mrs. Wedgeworth, he testified that he had met the applicable standard of care before, during, and after surgery. Dr. Mixon believed that he had exceeded the standard of care when he initially recommended that Mrs. Wedgeworth be admitted to the hospital and undergo a C.T. scan as opposed to recommending only a follow-up appointment. As discussed above, Dr. Zeringue, and Dr. Finley by stipulation, testified that they would have only recommended a follow-up appointment.

Defendant also presented the video tape deposition testimony of its expert neurosurgeon, Dr. Jason Cormier. Dr. Cormier testified that he examined Mrs. Wedgeworth on February 7, 2012, during her hospital stay at OLOL. Dr. Cormier's results indicated a normal examination with no signs of an infection.

Dr. Cormier's testimony was supported in part by the trial testimony of Plaintiffs' expert neurosurgeon, Dr. Leo DeAlvare, who testified that he also examined Mrs. Wedgeworth on February 7, 2012, at OLOL. On cross-examination, Dr. DeAlvare agreed that his examination of her was normal, even though he testified on direct examination that Mrs. Wedgeworth's brain infection was a direct result of the revision FESS procedure at issue.

Plaintiffs also presented their expert ENT at trial, Dr. John Bogdasarian. Dr. Bogdasarian testified that he was board-certified and had been practicing for approximately thirty-six years. According to his testimony, during this time, he performed approximately ten to fifteen sinus surgeries per year. His testimony indicates that after reviewing the applicable office and hospital records and charts, Mrs. Wedgeworth's medical records, and depositions of Plaintiffs and Dr. Mixon, he disagreed with the medical review panel's opinion. Dr. Bogdasarian stated that he was in a better position than Drs. Worley, Zeringue, and Finley to render an opinion as they were unable to review Plaintiffs' depositions since Plaintiffs had not been deposed prior to the medical review panel's finding. According to his testimony, Dr. Bogdasarian had never witnessed a brain being biopsied during a FESS procedure, and Dr. Mixon breached the standard of care by biopsying the brain. At trial, he criticized Dr. Mixon's post-surgical care which consisted of performing two endoscopic procedures on Mrs. Wedgeworth in his office on February 2, 2012. Dr. Bogdasarian opined that since Dr. Mixon knew that there was a hole in Mrs. Wedgeworth's brain but was unsure as to its location, the correct procedure would have been to perform a C.T. scan that day. Dr. Bogdasarian stated that it would have been proper to insist that the patient present to the hospital while the treating physician consulted an infectious disease physician and possibly a neurosurgeon. Dr. Bogdasarian opined that Augmentin, the antibiotic prescribed by Dr. Mixon, does not protect the brain from infection. He concluded that had Mrs. Wedgeworth been hospitalized on February 2, 2012, she likely would not have developed a brain infection.

After hearing the foregoing testimony, the jury determined that, under the facts and circumstances of this case, Dr. Mixon did not breach the applicable

standard of care. The jury chose to believe the testimony of Defendant's experts, Drs. Worley, Zeringue, and Finley, two of whom had performed approximately 3,200[3] sinus surgeries over the course of their careers, rather than the testimony of Plaintiffs' expert ENT, Dr. Bogdasarian, who performed approximately 540 sinus surgeries throughout his career. Moreover, both Dr. Cormier and Plaintiffs' expert neurosurgeon, Dr. DeAlvare, testified that their examinations of Mrs. Wedgeworth yielded normal results. "Where the fact-finder's determination is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous." *Purvis*, 144 So.3d at 926. It was, therefore, reasonable for the jury to rely upon Defendant's experts' opinions rather than the opinion of Dr. Bogdasarian. Accordingly, we find that the trial court did not manifestly err in denying Plaintiffs' Motion For Judgment Notwithstanding Verdict Or Alternatively New Trial.

## DECREE

The trial court's judgment is affirmed. All costs of this appeal are assessed to Plaintiffs/Appellants, Sherry Wedgeworth and James Wedgeworth.

**AFFIRMED**.

---

[3] This takes into account only the surgeries performed by Drs. Worley and Zeringue, as there is no information regarding the amount of surgeries performed by Dr. Finley.