STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-644


CHARLES NEIL BAILEY

VERSUS

TARA MELANIE BAILEY


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 90,587
HONORABLE TONY A. BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and John E. Conery, Judges.


**AFFIRMED.**

**Lisa Nelson**
**Williams & Nelson**
**202 West North Street**
**Leesville, Louisiana  71446**
**(337) 238-4704**
**Counsel for Plaintiff/Appellant:**
        **Charles Neil Bailey**

**Charles Sam Jones**
**Attorney at Law**
**Post Office Box 995**
**DeRidder, Louisiana  70634**
**(337) 463-5532**
**Counsel for Defendant/Appellee:**
        **Tara Melanie Bailey**

**KEATY, Judge.**

Divorced father appeals from a judgment rendered in this child custody and support matter that arose out of his contested divorce proceeding. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The following history was provided in the Appellant Brief filed by Charles Neil Bailey (Chuck).[1] In her Appellee Brief, Tara Melanie Bailey (Tara), does not dispute that history, except to add information regarding Chuck's having been represented by five different attorneys within the course of this proceeding.

> This matter stems from a contested divorce proceeding initiated by the filing of petitions by both parties. The parties were married on November 25, 2006 in Las Vegas, Nevada but resided together as husband and wife in Leesville, La. They have one child born of the marriage, L.E.B.,[2] born January 5, 2009. [Tara] has a child Z.R.B,[3] born July 21, 2001, from a previous relationship, that lived with the parties since their relationship began and who has maintained a close and loving relationship with [Chuck]. The parties physically separated on or about January 30, 2015 and except for periods when [Chuck] was unavailable due to work, have mostly shared physical custody of the child on an alternating weekly basis from the time of their separation. [Chuck] has also had significant visitation with Z.R.B. The initial petition for divorce was filed by [Chuck] on March 9, 2015. Appellant sought the joint and shared custody of the minor child, L.E.B. as well as visitation with Z.R.B. Appellant alleged that the parties had agreed to this arrangement and that no child support would be paid by either party. Appellant also sought restraining orders and use orders. An initial Rule date was fixed for April 20, 2015. However on Ma[r]ch 3, 2015 in a suit entitled and captioned "TARA MELANIE BAILEY V CHARLES N BAILEY", DOCKET #90838B, [Tara] had filed for a Protective Order. [T]hese two cases were consolidated under docket #90857 and all matters assigned to Division A.
>
> . . . Appellee filed an Answer and Reconventional Demand seeking joint custody with Appellee being designated as the primary

---

[1] To save space, we have removed from this history page references to the record, as well as information and dates that are not relevant to the merits of this appeal. For clarity, and to save additional space, we have substituted Chuck and Tara in place of their full names.

[2] L.E.B. are the initials of Loryn Elise Bailey.

[3] Z.R.B. are the initials of Zachary Ryan Bruckbauer (Zach).

custodial parent, as well as restraining orders and use orders. These matters were also fixed for April 20, 2015.

Appellant filed his Answer to Appellee's Reconventional Demand . . . and a First Supplemental and Amending Petition for Divorce. . . . The Amendment changed his request for custody to show he was now seeking joint custody with Appellant being designated as the primary custodial parent.

On April 20, 2015, the parties entered into a stipulated partial judgement which addressed injunctive relief, use of property and rental reimbursement but did not address custody or visitation, effectively leaving the parties to continue sharing L.E.B. on the alternating weekly basis.

. . . .

Appellee answered Appellants First and Second Amending and Supplemental Petitions and filed her First Amending Reconventional Demand. . . . Said Amendment alleged that Appellant, [Chuck], was physically abusive to Appellee during the parties marriage, again seeking primary custody of L.E.B, seeking additional injunctive relief, use of the home, interim spousal support, child support, rental value of a home as well as a divorce under Article 103(4) & (5) due to alleged abuse. Hearing was fixed [but later] continued at Appellee's request[.]

. . . Appellant answered Appellee's First Amending Reconventional Demand and then filed a Third Supplemental and Amending Petition for Divorce seeking sole custody of L.E.B or alternatively joint with Appellant being designated domiciliary parent and seeking visitation with Z.R.B.

Appellant filed a Motion for Psychological evaluations on December 1, 2015[, and] again requested Psychological Evaluations in the Motion for Continuance he filed[.] The Order appointing Dr. John Simoneaux to conduct a mental health evaluation regarding custody/visitation was signed on December 8, 2015 and hearing was continued without date pending the evaluations.

Appellee then filed a Rule for Contempt . . . alleging [Chuck] had violated the inunctions prohibiting the parties from bothering or harassing each other because of posts he made on social media between May and December 2015, had admitted to abuse of her, and was using Z.R.B. to gather information against her for court and requesting that Appellant's visitation with L.E.B. and Z.R.B. be limited to overnight and supervised. Appellee attached several exhibits to her Rule and an Ex Parte Order restricting Appellee's visitation was issued. Hearing was fixed for March 28, 2016. Appellant immediately filed a Motion to Vacate the Ex Parte restriction of his visitation and the order was rescinded by the Court. The matter was continued in open court and . . . eventually continued without date.

Appellee filed a Rule for Final Divorce on July 26, 2016. A hearing was fixed for September 12, 2016 and the parties were divorced on that date.[4]

The parties saw Dr. John Simoneaux on May 31, 2016 (Chuck) and June 16, 2016 (Tara) and his reports were issued in June and July 2016. . . . Appellee filed a Motion to refix the remaining matters for trial. . . . A Status Conference was then ordered for November 28, 2017, and the custody matters re-fixed for January 16, 2018. That hearing was rescheduled at Appellant[']s request. On January 11, 2018 the parties in a status conference with the Judge, fixed all matters for April 5, 2018 and temporarily agreed to a joint custody for the parties with [Tara], being temporarily designated domiciliary parent of L.E.B., with the reasonable visitation to [Chuck].

[Seven] days before the scheduled contested hearing, Appellant's attorney, E. GREY TALLEY, filed a Motion to withdraw. Said Motion was denied by the court. Appellant was notified by E. GREY TALLEY of her intent to withdraw by the Motion she filed . . . and began to seek other counsel. [Two] days before the schedule[d] hearing, attorney WESLEY R. BAILEY, enrolled as counsel for Appellant and requested a continuance. A continuance was granted, . . . leaving Appellant[']s counsel 13 days to prepare to try a contested case that had been pending for 3 years.

Day 1 of testimony was held on April 16, 2018 with a second day scheduled for May 8, 2018.

At the conclusion of the second day of trial, the court ordered memorandum of law and child support worksheets from the parties, then took the matter under advisement.

The Court issued Written Reasons on July 25, 2018. A Judgement was signed on August 17, 2018 awarding the parties joint custody of the minor child, with [Tara], being designated the domiciliary parent and [Chuck], having specific rights of visitation on an alternating weekly basis; ordering [Chuck], to pay child support in the amount of $325 per month; finding [Chuck] to be in arrearage of his child support obligation and rendering a judgement against him and in favor of [Tara], in the amount of $14,716.40, to be repaid in the minimum amount of $150 per month; holding [Chuck] in contempt of court for postings on Facebook and ordering him to pay court costs and attorney fees in the amount of $500. The Judgement was mailed by the Clerk of Court on August 27, 2018. [Chuck] filed a timely Motion for New Trial. . . . Said Motion was . . . heard on December 6, 2018. While the motion for new trial was pending, [Tara] applied for services with the Louisiana Department of Social Services for enforcement and collection of the child support order and arrearages. An enforcement

---

4 The Judgment of Divorce did not address the issue of child support.

order was filed under Docket # R-10339-2018 on September 7, 2018 CS Order and signed by the Honorable C. Anthony Eaves on September 13, 2018, designating DSS as the payee for the child support obligation and transferring jurisdiction over the child support order to the 30th JDC Juvenile court for subsequent enforcement and modification. [Tara], filed 2 rules for Contempt of Court against [Chuck], alleging his failure to pay child support during the pendency of the Motion for New Trial, and his failure to pay attorney fees ordered in the contempt judgement. Those rules were also fixed for hearing on December 6, 2018. On December 6, 2018, the Court denied Appellant[']s Motion for New trial [sic] and requested Memoranda from counsel on issues raised at the hearing. A collection action by Support Enforcement was also heard on December 14, 2018. Appellant filed a Memorandum and Appellee requested the matters be dismissed.

Chuck timely appealed and is now before this court asserting that the trial court erred, as a matter of law and fact: 1) in granting domiciliary status to Tara; 2) in calculating child support; 3) in holding him in contempt of court; 4) in failing to allow him visitation with Zachary; and 5) by denying his Motion for New Trial.

## DISCUSSION

A trial court's ruling in a child custody case is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. *Guidry v. Guidry,* 07-1272 (La.App. 3 Cir. 3/5/08), 979 So.2d 603. To the extent that its ruling is based on factual determinations, an appellate court reviews these findings for manifest error. *Rosell v. ESCO,* 549 So.2d 840 (La.1989).

*Lemoine v. Lemoine*, 09-861, p. 2 (La.App. 3 Cir. 12/16/09) 27 So.3d 1062, 1063. "The trial court is in the best position to evaluate the testimony and credibility of witnesses in a custody matter." *Gregory v. Gregory*, 11-1263, p. 2 (La.App. 3 Cir. 3/7/12) (unpublished opinion).

### *Designation of Tara as Domiciliary Parent of Loryn*

"In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." La.Civ.Code art. 131. In doing so, the trial court "shall consider all relevant factors in determining the best interest of the child" before listing fourteen factors that should be included in that determination. La.Civ.Code art. 134(A). Louisiana Revised Statutes 9:335(B)(1)

4

(emphasis added) mandates that when there is a joint custody decree, "the court **shall designate a domiciliary parent** except when there is an implementation order to the contrary or for other good cause shown." The statute presumes that "all major decisions made by the domiciliary parent are in the best interest of the child[.]" La.R.S. 9:335(B)(3). As a safeguard, however, the statute provides that "All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent." *Id.*

In a written RULING OF THE COURT signed on July 23, 2018, the trial court noted the following regarding the custody of the parties' daughter, Loryn:

> I have reviewed all exhibits received into evidence including the psychological evaluation performed by Dr. Simoneaux, received by the Court approximately July 28, 2016.
>
> In reviewing the twelve (12) factors in Civil Code Art. 134,[5] the Court finds that:
>
> No. 1— The love, affection, and other emotional ties between each party and the child. **The Court finds this factor to be equal.**
>
> No. 2— The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child. **The Court finds this factor to be equal.**
>
> No. 3— The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs. **The Court finds this factor to be equal.**
>
> No. 4— The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment. **The Court finds this factor to be equal in that the parties have exercised equal sharing for the most part since the parties have separated.**

---

[5] The trial court omitted from its ruling two factors from La.Civ.Code art. 134 that concern the "potential for the child to be abused" and "[t]he history of substance abuse, violence, or criminal activity of any party." After review of the record and exhibits, we agree that those factors were not relevant to this matter.

No. 5— The permanence, as a family unit, of the existing or proposed custodial home or homes. **The Court finds this factor to be equal.**

No. 6— The moral fitness of each party, insofar as it affects the welfare of the child. **The Court finds this factor to be equal.**

No. 7— The mental and physical health of each party. **According to Dr. Simoneaux, both parties have some issues that need to be dealt with regarding the raising of this child so neither party is given any advantage here.**

No. 8— The home, school, and community history of the child. **The parties live relatively close to each other and in the same school district that the child attends so this factor is equal.**

No. 9— The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference. **The child is young in age and did not testify.**

No. 10— The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party. **The Court believes both parties fail in achieving this goal so neither parent receives an advantage.**

No. 11— The distance between the respective residences of the parties. **The parties live relatively close to each other and in the same school district that the child attends so this factor is equal.**

No. 12— The responsibility for the care and rearing of the child previously exercised by each party. **The Court finds this factor to be equal in that the parties have exercised equal sharing for the most part since the parties have separated.**

The Court puts a great emphasis on the fact that these parents have for the majority, shared custody of the child since their separation. The Court does have some serious issues with some of the actions of the parties since the separation. I will deal with these issues later in the ruling.

6

> It is the ruling of the Court that it is the best interest of the child that the parties exercise shared joint custody of the child, with the mother being designated as the domiciliary parent. The physical custody of the child will alternate on a one week/one week basis in the same manner the parties have been doing since the separation.

Later in its ruling, the trial court remarked:

> The Court does want to state that the evidence did show that Mr. Bailey was not honest regarding a situation he put Zachary in that he should never have been made a part of. It appears to this Court that Mr. Bailey may make decisions to hurt Ms. Lynn[6] instead of making decision that are in the best interest of the child. For this reason, Ms. Lynn was named domiciliary parent.

In the Summary and Recommendations he made to the trial court after completing psychological evaluations of Chuck, Tara, and Loryn, Dr. Simoneaux noted that "Chuck essentially charges Tara of extraordinarily extreme behaviors, some of which would involve, if he were believed, incarceration. . . ." Dr. Simoneaux was "worried over the fact that [Chuck's] assertions about his ex-wife were so extreme that he would undoubtedly communicate some of those assertions and criticisms to [Loryn] either directly, or implicitly." On the other hand, Dr. Simoneaux noted that Tara has "narcissistic traits" and "does not fully realize the full implications of her behaviors." He found that Tara was "rather self-centered, egocentric, and may well often place her immediate needs and wants over the long-term wellbeing of those around her, even including her daughter." In addition, Dr. Simoneaux found "some indications that [Tara] may well have used [Chuck's] contact with Zachary after the separation, in a vindictive way, simply to punish him for some of his behaviors that she does not agree with." Dr. Simoneaux found Loryn to be "an absolutely delightful child[,]" noting that she was "well behaved, polite, friendly, and obviously quite stable." In fact, he opined that "Loryn may well be the

---

[6] At the time this matter was tried, Tara was married to a man named Adam Lynn, and thus, the trial court referred to her as "Ms. Lynn."

7

most reasonable person in this dispute." Nevertheless, Dr. Simoneaux "urged" Chuck and Tara to seek therapy "for Loryn's best interest to be assured."

Dr. Simoneaux recommended "an effectively even physical custody split." He specifically found that neither Chuck nor Tara "surface as an obvious choice as domiciliary parent. He stressed, however, his belief that "not naming a domiciliary parent sets this situation up for them to argue over minor, microscopic details, and those arguments have more potential to hurt Loryn in [sic] any other element in this case." Dr. Simoneaux remarked that this case presented a "very close call[,]" but ultimately, he recommended that "[o]ver the long term, however, it does appear the [Tara] may have a slight advantage, primarily because of gender, in deciding who the domiciliary parent might be."

The record reveals that trial court thoroughly analyzed the evidence before it and properly considered the factors found in La.Civ.Code art. 134 in determining what custody arrangement would be in Loryn's best interest. As mentioned previously, the law mandates that a domiciliary parent be named. Considering the record before us, which includes evidencing of Chuck's fluctuating employment since his divorce, we find no abuse of discretion in the trial court's having named Tara as Loryn's domiciliary parent. Thus, Chuck's first assigned error lacks merit.

### *Child Support of Loryn*

Guidelines for Determination of Child Support are set forth in La.R.S. 9:315 through 9:315.26. "A child support award is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion." *Lavigne v. James*, 15-19, p. 3 (La.App. 5 Cir. 5/14/15), 170 So.3d 1163, 1165. However, "a district court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error." *Id.* at 1166.

During the course of the two-day trial of this matter, both Chuck and Tara offered testimony and documentary evidence regarding their respective incomes. They each also submitted sample worksheets for the trial court to consider in its calculation of the future child support of Loryn. In the two worksheets he submitted, Chuck asked that Tara be ordered to pay him either $105.00 or $9.64 per month in child support. Tara submitted worksheets supporting her request that Chuck be ordered to pay her either $499.07 or $1,079.71 in monthly child support. In addition, Tara submitted documentation of the amount of past-due child support she was seeking retroactive to 2015, which totaled just of $25,071.06. During her testimony on the second day of trial, Tara noted that, several weeks prior, Chuck gave her $300.00 to put toward the child support arrearages that he owed. At the conclusion of trial, the trial court took the matter under advisement and ordered the parties to submit post-trial memorandums. Chuck's post-trial memorandum did not address the issue of child support. In her post-trial memorandum, however, Tara submitted an additional child support worksheet based upon the testimony that was elicited at trial wherein she updated her request for prospective child support to be paid by Chuck to the amount of $2,856.69. She also upped her request for child support arrearages owed by Chuck to $30,213.78.

In its written RULING OF THE COURT, the trial court stated, "Child support in this matter is very difficult to determine because of the variation in the income of Mr. Bailey." Thereafter, the trial court explained how it arrived at the figure to use for Chuck's income:

> Clearly in 2015 he made $109,340.0[0]. In 2016 his W-2 shows $81,597.00 for that year. His W-2 for 2017 shows income of $62,250.00. However, he stated under oath that his company, a consulting firm, made $72,000.00 in Afghanistan for approximately one month. He also stated he made approximately $3,500.00 per month for the months of April through December of 2017 for a total of $31,500.00. He also testified he received approximately $3,000.00 per

month for unemployment. While Mr. Bailey testified as to what his company made, he did not testify as to what he received. The Court also takes note of the fact that at least two court dates were continued because Mr. Bailey was out of the country working. . . .

However, because of the unknowns in determining the income of Mr. Bailey, the Court is going to use the amount of $109,340.00 for the year 2015, the amount of $81,597.00 for the years 2016 and the income of $70,000.00 for the year 2017. Because of the disparity of income, the Court is going to use this three year average. This brings the monthly income for Mr. Bailey to $7,248.25.

With that being said, the monthly child support obligation owed by Mr. Bailey would calculate to $325.00 per month, based on shared custody, with Mr. Bailey's percentage being 68% and Ms. Lynn's being 32%.

On appeal, Chuck acknowledges that the amounts the trial court used for the years 2015 and 2016 are correct. With regard to his 2017 income, Chuck's 2017 W-2 lists his wages as $52,124.95. His W-2 does not include the $72,000.00 that he testified he was paid for work he did overseas in November and December 2017 after starting his own consulting firm. With regard to the amount of his income at the time of trial to be used in calculating prospective child support, Chuck insists that the trial court erred in averaging three years of his prior earnings. He submits that the trial court should have imputed either minimum wage or $0.00 income to him, such that Tara would owe him $305.99 in prospective child support. Moreover, while he claimed at trial to have incurred start-up costs and expenses associated with his business, Chuck did not provide the trial court with any testimony or documentary proof of those actual costs and expenses. Having failed to do so, Chuck is precluded from arguing that the trial court failed to deduct any amounts from his 2017 gross income. *See Lavigne*, 170 So.3d 1163.

In her appellee brief, Tara notes that in January of 2018, Chuck filed a Motion to Continue in this matter due to him working overseas. She contends that "[a]lthough no income was offered for the overseas work, it was for a longer period

10

of time then his previous trip[,] . . . it is totally reasonable to conclude he made a minimum of $72,000, consistent with his previous trip." Tara submits that as "neither amount was included in [Chuck's] 2017 income, both should be included in his 2018 income."

A sizable disparity exists between Chuck's 2017 W-2 and the amount of income he testified as to actually having earned during that year. Likewise, he would have the income that he earned while working overseas in early 2018 ignored for purposes of determining his post-trial child support obligation. Given the totality of the circumstances, we find no manifest error in the trial court's "conclusions of fact regarding financial matters underlying [its] award of child support" in this matter. *Lavigne*, 170 So.3d at 1166. The explanations provided in its RULING OF THE COURT demonstrate that the trial court painstakingly considered the evidence before it in fashioning the appropriate child support to be awarded. Our review of the record reveals no abuse of discretion in that award.

### *Visitation with Zachary*

With regard to Chuck's request that he be awarded visitation with Zachary, the trial court noted in its reasons for judgment that it "has no authority to order Ms. Lynn to allow Mr. Bailey to visit with him just as the Court has no authority to order Mr. Bailey to pay child support on him." Nevertheless, the trial court stated that "the testimony adduced that Zachary did have a good relationship with Mr. Bailey and the Court believes it may be beneficial for Zachary to maintain a relationship with him."

Zachary was born on July 21, 2001. He reached the age of majority on July 21, 2019. The Louisiana Civil Code Articles regulating Child Custody only apply to minors. Accordingly, Chuck's third assigned error is moot.

11

*Contempt of Court*

"A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La.Code Civ.P. art. 221. "Contempts of court are of two kinds, direct and constructive." *Id.* Louisiana Code of Civil Procedure Article 224 defines "constructive contempt" as "any contempt other than a direct one[,]" explaining that:

> Any of the following acts constitutes a constructive contempt of court:
>
> . . . .
>
> (2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
>
> . . . .
>
> (10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt.

This court has previously directed that to find someone "guilty of constructive contempt, it is necessary to find that he or it violated the order of court intentionally, knowingly and purposefully, without justifiable excuse." *McCorvey v. McCorvey*, 05-1173, p. 4 (La.App. 3 Cir. 4/5/06), 926 So.2d 114, 117, *writ denied*, 06-959 (La. 6/16/06), 929 So.2d 1290. "The trial court has vast discretion in determining whether a party is in contempt of court and its decision will not be reversed absent and [sic] abuse of discretion." *Mason v. Mason*, 16-287, pp. 10-11 (La.App. 3 Cir. 10/5/16), 203 So.3d 519, 527 (quoting *McDonald v. McDonald*, 08-1165, p. 4 (La.App. 3 Cir. 3/4/09), 10 So.3d 780, 783).

In its written RULING OF THE COURT, the trial court stated:

> Regarding the issue of contempt, on April 20, 2015, a judgment was rendered prohibiting either party from harming, harassing,

bothering or annoying either party directly or through their agents, assigns, or any third parties for the purpose of annoying, harassing, intimidating or bothering said property.

In review of the exhibits offered into evidence, it is clear that Mr. Bailey violated this restraining order on many occasions.

During the trial on this matter, it was particularly troubling for this Court to notice how clever Mr. Bailey thought he was regarding one of his posts on Facebook regarding who should be invited to the divorce hearing, even going so far as to solicit advice on Facebook as to who should be invited. I do think Mr. Bailey summed up the contempt when he posted on Facebook, "20% may not care, 80% may be entertained in whatever fashion becomes of them. But 100% learn! Including wives, husbands of girlfriends, fathers, future friends, etc. The sole purpose has long been achieved. The rest is just for fun..."

The Court believes that Mr. Bailey did purposefully put this material on Facebook because he thinks it is fun to harass and annoy Ms. Lynn.

Therefore, the Court finds Mr. Bailey in contempt for the violation of the Court order. The sentence of the Court is that Mr. Bailey serve fifteen (15) days in the parish jail and pay FIVE HUNDRED AND NO/100 ($500.00) DOLLARS attorney fees to Mr. Jones for the filing of the contempt rule and pay the court costs for the filing of the rule for contempt. This payment will be due within ninety (90) days of the signing of the judgment. The jail time will be suspended upon the payments listed above and both parties are ordered not to put anything negative on social-media regarding this divorce or the other parent.

On appeal, Chuck contends that his intent when he "vented" to Facebook regarding Tara and their divorce was to defend his reputation and not for the purpose of annoying or harassing Tara. He reiterates his trial testimony wherein he stated the he did not mention Tara by name or "tag" her in his Facebook posts, and that he and Tara were not Facebook friends when the subject posts were made. Chuck further submits that his actions should not qualify as contempt because Tara testified that she was unaware of his posts until long after they were made.

When considering the numerous Facebook posts that Chuck made during the course of his and Tara's divorce in conjunction with the inappropriate situation that he put Zachary in, which the trial court characterized as an attempt to hurt Tara, we

13

cannot say that the trial court abused it great discretion in finding Chuck in contempt of court. This assignment of error has no merit.

*New Trial*

"When reviewing the grant or denial of a motion for a new trial, an appellate court cannot reverse the trial court's decision unless an abuse of discretion can be demonstrated." *Wedgeworth v. Mixon*, 15-686, p. 9 (La.App. 3 Cir. 2/3/16), 184 So.3d 876, 883, *writ denied*, 16-422 (La. 4/22/16), 191 So.3d 1049. *See also Mason*, 203 So.3d 519.

Chuck's motion for new trial was based on La.Code. Civ.P. art. 1972(1), which provides that "[a] new trial shall be granted, upon contradictory motion of any party, . . . [w]hen the verdict or judgment appears clearly contrary to the law and the evidence[.]"

In light of our having found no merit to any of Chuck's other assignments of error, we are unable to say that the trial court abused its discretion in denying Chuck's motion for new trial.

## DECREE

For the foregoing reasons, we affirm the trial court record in all respects. All costs of this appeal are assessed against Charles Neil Bailey.

**AFFIRMED.**

14